# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

|  |  |
|---|---|
| ENPAT, INC.,<br>a Florida Corporation,<br>Plaintiff,<br><br>v.<br><br>HARRY SHANNON,<br>Defendant. | ) **Case No.:**<br>) **6:11-cv-00084-GAP-KRS**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF ENPAT'S MOTION FOR CLAIM CONSTRUCTION (MARKMAN MOTION) re: ASSERTED CLAIMS 1, 2, 3, 4, 5, 6, 8, 9, 12, AND 13 OF UNITED STATES PATENT NO. 6,328,260;**

**MEMORANDUM IN SUPPORT; AND REQUEST FOR ORAL ARGUMENT**

**PURSUANT TO L.R. 3.01 AND THE SCHEDULING ORDER IN THIS CASE (DOC. NO. 16)**

Plaintiff ENPAT, INC, ("Enpat") respectfully moves this Court for claim construction regarding the asserted claims in this case, Claims 1, 2, 3, 4, 5, 6, 8, 9, 12, and 13 (the "Asserted Claims") of U.S. Patent No. 6,328,260 ("the '260 patent"). These are the asserted claims in this Action. The non-asserted claims, namely dependent Claims 7, 10, 11 and 14 are not at issue in this Action and therefore need no construction.

This is as simple and clear a Markman motion as this Court is likely to see. There are no "means plus function" claims in the '260 patent; the apparatus structure claimed is clearly defined in the claim language and in the intrinsic evidence; there is but one (1) independent claim that is definite and meets the requirements of Title 35 of the U.S. Code, as determined by the Board of Patent Appeals and Interferences ("BPAI") during the reexamination proceedings.

In fact all the Asserted Claims were held as patentable *without amendment* by the BPAI.  *The examination of the '260 patent has been exhaustingly thorough and lasted over nine years, with the same, consistent outcome:  the Asserted Claims of the '260 patent are clear and unambiguous.*

## TABLE OF CONTENTS

NOTICE OF MOTION, MOTION, AND REQUEST FOR ORAL ARGUMENT PURSUANT TO LOCAL RULE 3.01 ................................................................................................. 5

BRIEF HISTORY OF THE PATENT AND THE LITIGATION ................................. 6

    A.    Genesis Of The '260 Invention ................................................................. 6

    B.    Brief Discussion of the Patent Prosecution, Reexamination, and Litigation History... 6

MEMORANDUM OF POINTS AND AUTHORITIES ................................................ 7

  I.    THE LAW OF CLAIM CONSTRUCTION ...................................................... 7

    A.    Claim Terms Are To Be Given Their Plain, Ordinary Meaning. ................................. 8

    B.    Claim Preambles Are Not To Be Construed as Limitations Generally. ..................... 10

  II.    ENPAT'S ARGUMENTS FOR CLAIM CONSTRUCTION ........................................ 12

    A.    All Claim Terms Are Easily Given Their Plain and Ordinary Meaning. .................. 12

        1.    The Intrinsic Evidence Requires That The Claim Elements Be Given Their Plain and Ordinary Meaning. ................................................. 12

        2.    Defendant Shannon Clearly Understood The Meaning Of The Asserted Claim Terms When Asked About Them In His Deposition. ..................................... 13

3.      The Intrinsic Evidence Provides All The Definition Necessary To Understand The Plain And Ordinary Meaning Of the Asserted Claim Terms............................................ 14

4.      Plaintiff's Expert Dr. Michael Dreikhorn Found The Asserted Claim Terms To Be Understandable and Unambiguous As To Their Ordinary Meaning ............................... 16

B.      The Preamble Of Independent Claim 1 Should Not Be Construed As A Limitation. 16

5.      The Preamble Merely Recites An Intended Use..................................................... 17

6.      The Preamble Language Is Not Necessary In Order to Fully Understand The Scope Of The Asserted Claims................................................................................................ 17

7.      The Preamble Language Was Never Relied Upon During Prosecution To Distinguish the '260 Claims Over The Prior Art. ............................................................. 18

8.      The Preamble Is Not Relied Upon For Antecedent Basis...................................... 18

9.      The Preamble Does Not Breathe Life Into The Asserted Claims. ......................... 19

10.     Plaintiff's Expert Dr. Michael Dreikhorn Has Opined That The Preamble Language Is Not To Be Construed As A Limitation To Independent Claim 1. ............................... 19

ENPAT'S CONCLUSION AND PROPOSED CLAIM CONSTRUCTION ............................. 19

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page**

*Phillips v. AWH Corp.*, 415 F.3d. 1303 (Fed. Cir. 2005) ...............................................7,8,9,10,12

*Cybor Corp. v. FAS Techs. Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) .................................................7

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), 517 U.S. 368 (1996) .......7

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298(Fed. Cir. 1999) ................................8

*Toro Co. v. White Consol. Indus., Inc.,* 199 F.3d 1295 (Fed. Cir. 1999)...............8,20,21,22,23,24

*TDM  Am., LLC v. United States*, 85 Fed. Cl. 774...............................................................8

*Verve, LLC v. Crane Cams, Inc*., 311 F.3d 1116 (Fed. Cir. 2002) ...................................................9

*In re Nelson, 47 C.C.P.A. 1031*, 280 F.2d 172 (CCPA 1960) .........................................................9

*Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473(Fed. Cir. 1998)................................9

*Medrad, Inc. v. MRI Devices Corp.,* 401 F.3d 1313 (Fed. Cir. 2005) .............................................9

*V-Formation, Inc. v. Benetton Group SpA,* 401 F.3d 1307 (Fed. Cir. 2005)...................................9

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.,* 375 F.3d 1341(Fed. Cir. 2004)...........................9

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111
(Fed. Cir. 2004)..........................................................................................................................9

*Brown v. 3M, 265 F.3d 1349* (Fed. Cir. 2001)......................................................................10,12

*Corning Glass Works v. Sumitomo Electric U.S.A., Inc.,* 868 F.2d 1251(Fed. Cir. 1989).......10,20

*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.,* 98 F.3d 1563
(Fed. Cir. 1996*)*........................................................................................................................10,20

*Catalina Marketing International, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801
(CAFC, 2002) ............................................................................................................................11,20

*In re Gardiner,* 36 C.C.P.A. 748, 171 F.2d 313(CCPA 1948) .....................................................11

*Roberts v. Ryer,* 91 U.S. 150 (1875)..............................................................................................11,20

*IMS Tech., Inc. v. Haas Automation, Inc.,* 206 F.3d 1422(Fed. Cir. 2000)..............................11,20

**Statutes**

35 U.S.C. § 112......................................................................................................................7,9
35 U.S.C. § 271........................................................................................................................11

**Rules**

L.R. 3.01 ....................................................................................................................................1

## NOTICE OF MOTION, MOTION, AND REQUEST FOR ORAL ARGUMENT

## PURSUANT TO LOCAL RULE 3.01

Pursuant to the Scheduling Order in this case (Doc. No. 16), Plaintiff Enpat, Inc. ("Enpat") moves for claim construction of Claims 1, 2, 3, 4, 5, 6, 8, 9, 12, and 13 of the '260 patent. As shown below, the claims of the '260 patent fall well within the boundaries of clarity and precision and are easily constructed under the established law of claim construction.

Enpat bases this motion on the following:

- Exhibit A: the '260 patent as issued;

- Exhibit B: the file history of the '260 patent;

- Exhibit C: the Reexamination record;

- Exhibit D: the Reexamination Certificate upholding all claims as valid without amendment;

- Exhibit E: the opinions of Plaintiff's expert Dr. Michael Dreikhorn in support of Plaintiffs claims;

- Exhibit F: the deposition testimony of Defendant Harry Shannon taken February 4, 2011; and

- the Local Rules, the Scheduling Order in this case, the authorities cited herein, and the pleadings and papers on file in this Action.

Plaintiff Enpat requests thirty (30) minutes of oral argument, and one hour total, should the Court desire to take argument before issuing its opinion, or should the Court be inclined to deny any part of Enpat's proposed claim construction herein.

## BRIEF HISTORY OF THE PATENT AND THE LITIGATION

### A.  Genesis Of The '260 Invention

Lake Aircraft is a manufacturer of amphibious aircraft that has a history that goes back to 1948. The first plane produced was the Colonial Skimmer. It was derived from an original design produced by Dave Thurston in 1946 when he was with Grumman Aircraft. Grumman never produced the design, but Thurston formed Colonial Aircraft as a side business to continue development. With the exception of between 2004 and 2008, since the 1980's, the FAA-approved design has been owned by REVO, Inc. (REVO) and aircraft have been produced by Aerofab, Inc.

In 1999, REVO received reports of cracking in the wing spar of LA-4 series aircraft. To remedy the potential of future cracks, REVO developed a wing spar modification kit that included doublers, fillers, and attaching hardware. REVO obtained both FAA certification and U.S. Patent 6,328,260 for their modification kit. This kit was provided to their customers as Service Bulletin kit B-79, and as an action to satisfy FAA airworthiness directive 2000-10-22. On January 31, 2002, REVO assigned the rights to the subject patent to Enpat, Inc.

### B.  Brief Discussion of the Patent Prosecution, Reexamination, and Litigation History

The application that matured into the '260 patent was filed on October 25, 2000 and issued on December 11, 2001.  Subsequent to the issuance of the patent, Plaintiff Enpat brought

suit against Harry Shannon, alleging patent infringement.[1]  Defendant Shannon, with funding provided by other Lake aircraft owners, petitioned for and was granted a reexamination of the '260 patent.  The Aircraft Owners and Pilots Association also petitioned for reexamination, which was granted, and the reexamination proceedings were combined into a single reexamination.  The examiner erroneously rejected all fourteen claims of the patent.  The examiner was overruled on appeal, with the final result that all fourteen claims of the '260 patent were held to be valid and enforceable.  The Reexamination Certificate (See Exhibit D hereto) issued on March 8, 2011.  Enpat has patiently defended its patent, and, now that the '260 patent has survived reexamination completely intact with the blessings of the Board of Patent Appeals and Interferences, seeks *to finally have its enforcement argument heard by this Court*.  This day has been almost nine years in coming.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   THE LAW OF CLAIM CONSTRUCTION

Claim construction is a purely legal determination by the Court in view of the claim language, the contextual usage in the claims, the teaching in the patent specification, and the record of prosecution before the Patent Office (the file history). *See* 35 U.S.C. § 112; *Phillips v. AWH Corp.*, 415 F.3d. 1303, 1311-12 & 1328 (Fed. Cir. 2005) (en banc); *Cybor Corp. v. FAS Techs. Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 & 981 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 368 (1996). When construing claim scope, courts may consult the specification, the prosecution history (which in

---

[1] See 6:02-cv-00769-PCF, Federal District Court for the Middle District of Florida, filed July 5, 2002

this case includes the reexamination record), and other relevant evidence. *Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1309, 51 USPQ2d 1161, 1169 (Fed. Cir. 1999).

The '260 patent in suit (Exhibit A hereto), its file history (Exhibit B hereto) the reexamination record (Exhibit C hereto) and the Reexamination Certificate (Exhibit D hereto) comprise the "intrinsic record" for the '260 patent and are, by definition, matters of public record. *See Phillips*, 415 F.3d at 1317. Plaintiff Enpat's claim analysis and argument regarding claim construction are set forth herein.

**A. Claim Terms Are To Be Given Their Plain, Ordinary Meaning.**

Generally, claim language receives its plain, ordinary meaning as used in the relevant art. *Toro Co. v. White Consol. Indus., Inc.,* 199 F.3d 1295, 1299, 53 USPQ2d 1065, 1067 (Fed. Cir. 1999). The Federal Court of Claims also has opined "[I]t is a longstanding principle of claim construction that the words of a claim must be given their ordinary and customary meaning." *TDM Am., LLC v. United States*, 85 Fed. Cl. 774, 782, (citing *Phillips v. AWH*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc)). And, moreover: "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of invention." *Phillips* 415 F.3d at 1313.

The *Phillips* court provided guidance and overview of the longstanding principle that it is the intrinsic evidence (the patent itself and the prosecution record) that best provides any needed insight into the ordinary meaning of the terms used in a patent claim, and that the inventor herself is generally one of ordinary skill in the art:

> "[T]he inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation. See *Innova*, 381 F.3d at 1116. That starting point is based on the well-settled understanding that inventors are typically persons skilled in the field of the invention and that patents are addressed to and intended to be read by others of

skill in the pertinent art. *See Verve, LLC v. Crane Cams, Inc.,* 311 F.3d 1116, 1119 (Fed. Cir. 2002) (patent documents are meant to be "a concise statement for persons in the field"); *In re Nelson*, 47 C.C.P.A. 1031, 280 F.2d 172, 181, 1960 Dec. Comm'r Pat. 369 (CCPA 1960) ("The descriptions in patents are not addressed to the public generally, to lawyers or to judges, but, as section 112 says, to those skilled in the art to which the invention pertains or with which it is most nearly connected.").

Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification. This court explained that point well in *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998):

> "It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed. Such person is deemed to read the words used in the patent documents with an understanding of their meaning in the field, and to have knowledge of any special meaning and usage in the field. The inventor's words that are used to describe the invention--the inventor's lexicography--must be understood and interpreted by the court as they would be understood and interpreted by a person in that field of technology. Thus the court starts the decision making process by reviewing the same resources as would that person, viz., the patent specification and the prosecution history."

*See also Medrad, Inc. v. MRI Devices Corp*., 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."); *V-Formation, Inc. v. Benetton Group Spa*, 401 F.3d 1307, 1310 (Fed. Cir. 2005) (intrinsic record "usually provides the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of the invention"); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.,* 375 F.3d 1341, 1351 (Fed. Cir. 2004) (proper definition is the "definition that one of ordinary skill in the art could ascertain from the intrinsic evidence in the record")." *Phillips* 415 F.3d at 1313, 1314, citing *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111 (Fed. Cir. 2004), *Verve*, *supra*; *In re Nelson, supra; Multiform, supra; Medrad, supra; V-Formation, supra; and Unitherm, supra.*

The *Phillips* court also opined as to the situation, as in the instant Action, wherein the claim terms are of such simple and everyday terminology that the Court should simply adopt a lay person's understanding of the terms:

"[I]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and **claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words**. See *Brown v. 3M, 265 F.3d 1349, 1352* (Fed Cir. 2001) (holding that the claims did "not require elaborate interpretation")." *Phillips* 415 F.3d at 1314. (emphasis added), citing *Brown*.

The case history supporting the position that claims should be give their plain, ordinary meaning is voluminous and indisputable.  Moreover, it is abundantly clear that some claim terms are of such plain meaning that lay persons are perfectly capable of understanding them without ambiguity; that the inventor is a person of ordinary skill in the art; and that the intrinsic record is the place where claim construction begins.  Claim construction need go no further if the claim terms are of a simple nature and plain meaning.  As shown below, the Asserted Claims of this Action are such claims.

## B. Claim Preambles Are Not To Be Construed as Limitations Generally.

Whether to treat a preamble as a limitation is a determination "resolved only on review of the entire . . . patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.,* 868 F.2d 1251, 1257, 9 USPQ2d 1962, 1966 (Fed. Cir. 1989); *see also  Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.,* 98 F.3d 1563, 1572-73, 40 USPQ2d 1481, 1488 (Fed. Cir. 1996) ("Whether a preamble stating the purpose and context of the invention constitutes a limitation of the claimed process is determined on the facts of each case in light of the overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history.").

The Court of Appeals for the Federal Circuit has laid out an overview of the law regarding whether claim preambles should be construed as claim limitations in *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 809 (CAFC, 2002):

> "…preambles describing the use of an invention **generally do not limit the claims because the patentability of apparatus or composition claims depends on the claimed structure, not on the use or purpose of that structure**.  *In re Gardiner,* 36 C.C.P.A. 748, 171 F.2d 313, 315-16, 80 USPQ 99, 101 (CCPA 1948) ("It is trite to state that the patentability of apparatus claims must be shown in the structure claimed and not merely upon a use, function, or result thereof."). Indeed, "the inventor of a machine is entitled to the benefit of all the uses to which it can be put, no matter whether he had conceived the idea of the use or not." *Roberts v. Ryer,* 91 U.S. 150, 157, 23 L. Ed. 267 (1875). More specifically, this means that a patent grants the right to exclude others from making, using, selling, offering to sale, or importing the claimed apparatus or composition for any use of that apparatus or composition, whether or not the patentee envisioned such use. *See* 35 U.S.C. § 271 (1994). Again, **statements of intended use or asserted benefits in the preamble may, in rare instances, limit apparatus claims, but** *only if the applicant clearly and unmistakably relied on those uses or benefits to distinguish prior art*.  Likewise, this principle does not mean that apparatus claims necessarily prevent a subsequent inventor from obtaining a patent on a new method of using the apparatus where that new method is useful and nonobvious."  (emphasis added)

The CAFC has also expressed the general rule that preambles are not limiting when the claim body describes a complete invention, and offers a simple test:  if deletion of the preamble does not affect the structure, the preamble is not necessary to understand the claim, and thus it is not a limitation of the claim.

> "… a **preamble generally is not limiting when the claim body describes a structurally complete invention** such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention. *IMS Tech., Inc. v. Haas Automation, Inc.,* 206 F.3d 1422, 1434, 54 USPQ2d 1129, 1136-37 (Fed. Cir. 2000)" *Catalina*, 289 F.3d at 809 (emphasis added)

As shown below, the preamble of independent Claim 1 in the present Action is undeniably non-limiting.

## II.    ENPAT'S ARGUMENTS FOR CLAIM CONSTRUCTION

### A.  All Claim Terms Are Easily Given Their Plain and Ordinary Meaning.

Referring to the '260 patent (Exhibit A) it is apparent that the terms of each of the Asserted Claims are of the type referred to by the *Phillips* court in which "claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314, citing *Brown*.  Specifically, the claim elements which the claim language utilizes to define the metes and bounds of the claimed scope are clearly defined in the specification, which includes the various figures of the patent.

### 1.   The Intrinsic Evidence Requires That The Claim Elements Be Given Their Plain and Ordinary Meaning.

A thorough review of the intrinsic evidence (Exhibits A, B, C and D hereto) reveals the following:

- At no time during prosecution was a question of term meaning raised, nor was definition beyond the specification wording, for any claim term of the Asserted Claims.

- The specification, including the drawings, clearly depict that the proper construction of the terms of the Asserted Claims is the plain, ordinary meaning given such terms.

- The original Examiner, the Reexamination Examiner, and the BPAI each reviewed the claims of the patent in light of the specification and raised no issue as to claim interpretation for any of the terms of the Asserted Claims as issued.

They must have understood that each of the claim terms of the Asserted Claims needed no special construction beyond their plain and ordinary meaning.

## 2. Defendant Shannon Clearly Understood The Meaning Of The Asserted Claim Terms When Asked About Them In His Deposition.

Defendant Harry Shannon was specifically asked about each of the claim terms of the Asserted Claims in his deposition of February 4, 2011.  In each of his responses, Defendant Shannon clearly understood the plain meaning of each the claim terms of the Asserted Claims, and in fact was able to articulate whether each term of the Asserted Claims cover the accused instrumentality.  (Deposition of Harry Shannon, Exhibit F hereto, page 140, line 20 through page 146, line 15).  Defendant Shannon never once questioned the meaning or construction of any term of any Asserted Claim[2].  See for example, the questions regarding independent Claim 1. Defendant Shannon's one-word answers, all of which were "yes", indicates he had no trouble construing the claims.[3]

```
Q   Let's look at the elements comprising the kit. The
    first one is an upper doubler-strap and an upper
    filler-strap. Does the Canadian kit have those two
    elements?

A   Yes.

Q   A lower doubler-strap and a lower filler-strap is the
    next one. Does the Canadian kit have those two
    elements?

A   Yes.
```

[2] When asked about un-asserted Claim 10, Defendant Shannon admitted that he did not, at the time the question was asked after several hours of deposition, fully understand the claim.  However, Claim 10 is not asserted in this Action and should not be considered in the Court's Markman analysis or Opinion.
[3] Defendant Shannon's one word answers of "yes" also demonstrate the abundantly obvious conclusion that he is, and has been, fully aware of the Asserted Claims, admits infringement of the claims, and admits that his infringement is knowing and willful.

Q   A plurality of wing-spar attachment-bolts, just means
    more than one attachment bolt. Does the Canadian kit
    have that element?

A   Yes.

Q   The next one is kind of long. We may have to read it
    once or twice. "Wherein said -- wherein each said
    upper filler-strap and each said upper doubler-strap
    have a third series of wing-attach boltholes that
    correspond precisely with a first series of wing-
    attach boltholes in an upper edge of a wing spar web,
    and said lower filler-strap and said lower doubler-
    strap have a fourth series of wing-attach boltholes
    that corresponds precisely with a second series of
    wing-attach boltholes in a lower edge of said wing
    spar." Does the Canadian kit have that element?

A   Yes.

Q   Next one down, "Wherein said upper and said lower
    doubler-straps have a doubler-protective-coating and
    said upper and said lower filler-straps have a filler-
    protective-coating." Does the Canadian kit have that
    element?

A   Yes.

Q   "Wherein said upper doubler-strap has an upper
    inboard-end angle and said lower doubler-strap has a
    lower inboard end angle." Does the Canadian kit have
    that element?

A   Yes.

(Deposition of Defendant Harry Shannon, Exhibit F, Page 140 line 21 through page 142
line 7)

### 3.   The Intrinsic Evidence Provides All The Definition Necessary To

### Understand The Plain And Ordinary Meaning Of the Asserted Claim Terms.

The '260 patent claims an apparatus, specifically a kit.  The kit is comprised of doubler

straps and filler straps.  The specification and drawings provides unambiguous guidance as to the

plain and ordinary meaning of the terms of the Asserted Claims.  Reproduced below are Figures

4A and 4B from the '260 patent (Exhibit A hereto, page 5).  It is easily seen that the plain,

ordinary meaning of the claim terms is unambiguous in the intrinsic evidence.



FIG. 4A



FIG. 4B

4.   **Plaintiff's Expert Dr. Michael Dreikhorn Found The Asserted Claim Terms To Be Understandable and Unambiguous As To Their Ordinary Meaning**

Plaintiff's expert Dr. Michael Dreikhorn, in his Report (attached hereto as Exhibit E1), included a claim chart in which he maps each element of the Asserted Claims onto the infringing instrumentality.   By so doing he constructively held that the claim terms themselves are unambiguous as to their plain, ordinary meaning.   Referring now to his Report, Exhibit E1 hereto, page 19, he states:   "[I]n review of …the JCM Aerodesign Ltd. Modification kits, the JCM Aerodesign Ltd. kit is geometrically equivalent to … U.S. Patent 6,328,260." And "Based on the physical examination of the subject kits, my knowledge of reverse engineering practices in the civil aviation industry, FAA design certification processes, U.S. Patent Number 6,328,260 and USPTO reexamination and certification of the subject patent, the JCM Aerodesign Ltd. modification kit is a direct and equivalent infringement on at least claims 1, 2, 3, 4, 5, 6, 8, 9, 12, and 13 of U.S. Patent Number 6,328,260."   *Id.* at 20.    Dr. Dreikhorn had no trouble understanding the plain, ordinary meaning of the terms of the Asserted Claims: the same would be true for any person of ordinary skill in the art.

B.   **The Preamble Of Independent Claim 1 Should Not Be Construed As A Limitation.**

The Inventors of the invention of the '260 patent, Jack Tarbox and Phil Baker, invented a wing spar modification kit.  They did not invent an airplane.  The airplane that was the intended use of kit had, in fact been invented years earlier and had enjoyed decades of operational use.  It would be ludicrous to hold that these inventors claimed to invent the pre-existing amphibious aircraft.  *The preamble describes the airplane, not the kit.*  These statements, taken together, are enough to be completely persuasive that the preamble of Claim 1 should not be construed as a limitation to the Claim. *The preamble describes an airplane, not the wing spar modification kit*

*that is the invention.*  However, even though this alone is enough to be completely persuasive,

Enpat for completeness' sake reviews the other factors reviewed in the case law cited above.  As

a starting point, the language of the preamble is set forth below:

> "[A] modification kit for retrofitting a wing spar on an amphibious airplane, said
> airplane having a root rib, and said wing spar comprising a wing-spar cap angle
> that is attached to a wing spar web, said wing spar web having an upper edge and
> a lower edge and an inboard end that attaches to said root rib, a first series of
> wing-attach bolt-holes that is provided in said upper edge and a second series of
> wing-attach bolt-holes that is provided in said lower edge of said wing spar web,
> wherein said root rib is angled relative to a vertical plane of said amphibious
> airplanes, and wherein said inboard end of said wing spar has an inboard-end
> angle that corresponds to an angle of said root rib, said modification kit
> comprising:"   '260 patent, column 7, Claim 1 (*See* Exhibit A)

**5.  The Preamble Merely Recites An Intended Use.**

As set forth above, the preamble language of Claim 1 recites an intended use on a pre-

existing amphibious airplane.  Under the Courts holding in *Catalina*, cited above, an  intended

use does not find its way into the claim as a limitation; it is merely illustrative in nature.

*Catalina,* 289 F.3d at 809.

**6.  The Preamble Language Is Not Necessary In Order to Fully Understand The**

**Scope Of The Asserted Claims.**

The asserted apparatus claims do not need the preamble language to be full understood.

As cited above, none of the persons involved in the invention, application for patent,

examination, reexamination, or litigation have ever had to rely upon the preamble language to

fully understand the Asserted Claims.   If the preamble language provides no guidance or aid in

understanding the Asserted Claims, it cannot reasonably be construed as a claim limitation.

### 7. The Preamble Language Was Never Relied Upon During Prosecution To Distinguish the '260 Claims Over The Prior Art.

Referring now to both the '260 patent prosecution history (Exhibit B) and the reexamination record (Exhibit C) in their entirety, it is apparent that the Applicant never relied upon the preamble language to distinguish the claimed invention over the prior art.

### 8. The Preamble Is Not Relied Upon For Antecedent Basis.

Referring now to the Asserted Claims (Exhibit A, '260 patent, columns 7, 8), it is abundantly clear that *nowhere do the Asserted Claims refer to preamble language for an antecedent basis*. The elements of the Asserted Claims stand completely on their own in defining the metes and bounds of the claimed invention without any guidance, antecedent basis, or any other "help" whatsoever from the preamble language.

As an example, consider the elements of Claim 1 with the preamble removed:

A modification kit … comprising;
- an upper doubler-strap and an upper filler-strap;
- a lower doubler-strap and a lower filler-strap;
- and a plurality of wing-spar attachment-bolts;
- wherein each said upper filler-strap and each said upper doubler-strap have a third series of wing-attach boltholes that corresponds precisely with a first series of wing-attach bolt-holes in an upper edge of a wing spar web, and said lower filler-strap and said lower doubler strap have a fourth series of wing-attach bolt-holes that corresponds precisely with a second series of wing attach bolt-holes in a lower edge of said wing spar;
- wherein said upper and said lower doubler-straps have a doubler-protective-coating and said upper and said lower filler-straps have a filler-protective-coating, and
- wherein said upper doubler-strap has an upper inboard end angle and said lower doubler-strap has a lower inboard end angle.

### 9.  The Preamble Does Not Breathe Life Into The Asserted Claims.

In this the Asserted Claims are fully articulated absent the preamble.  The preamble does not breathe life into the claims and does not limit the claims in any way; it merely provides introductory terminology for the remainder of the claim.  The preamble merely states that the claim is for a wing spar modification kit, then goes on to describe an intended application.

### 10.  Plaintiff's Expert Dr. Michael Dreikhorn Has Opined That The Preamble Language Is Not To Be Construed As A Limitation To Independent Claim 1.

Plaintiff's expert Dr. Michael Dreikhorn also opined as one of ordinary skill in the art that "within the aviation industry, preamble language is not considered enforceable or authoritative." And, "… my experience and training tells me that preamble language with the civil aviation industry is not enforceable or authoritative." (*See* Dr. Dreikhorn's Report, Exhibit E1 hereto, page 8)[4]

### ENPAT'S CONCLUSION AND PROPOSED CLAIM CONSTRUCTION

Based on the above points and authorities; the arguments presented herein; the record evidence in the Exhibits hereto; the documents and pleadings in the Court's file; and any other evidence which the Court may properly consider, Plaintiff Enpat asserts that the following claim construction table, provided in Table 1 below, is appropriate.  Figure 1 below is provided to provide a graphic reference as an example of an instrumentality that embodies the proper construction of those claim elements that relate to structure.  <u>Enpat asserts, based upon the</u>

---

[4] Dr. Dreikhorn is an FAA certificated airframe and powerplant mechanic with inspection authorization.  He was formally an FAA designated airworthness representative.  He has rendered expert opinion in at least 26 prior matters in cases involving the largest airframers and related companies in the world, including The Boeing Company, Raytheon Company, Piper Aircraft Company, Lycoming Engines, Eaton Aerospace, Eagle Helicopter, Teledyne Continental Motors, and others.  See Exhibit E1, pages 6, 7

foregoing discussion regarding the law of claim construction as applied to the facts of this Action, that:

- the preamble of Claim 1 simply states an intended use and is not a limitation and therefore not an element of any of the Asserted Claims; and

- all claim elements should be given their plain, ordinary meaning.

**Table I.  Enpat's Proposed Claim Construction**

| Claim 1 of the '260 Patent | Enpat's Proposed Claim Construction |
|---|---|
| A modification kit for retrofitting a wing spar on an amphibious airplane, said airplane having a root rib, and said wing spar comprising a wing-spar cap angle that is attached to a wing spar web, said wing spar web having an upper edge and a lower edge and an inboard end that attaches to said root rib, a first series of wing-attach bolt-holes that is provided in said upper edge and a second series of wing-attach bolt-holes that is provided in said lower edge of said wing spar web, wherein said root rib is angled relative to a vertical plane of said amphibious airplanes, and wherein said inboard end of said wing spar has an inboard-end angle that corresponds to an angle of said root rib, said modification kit comprising: | Preamble only; merely states an intended use. Does not "breathe life" into any element of the Asserted Claims.  The Preamble is not a limitation. *See:  IMS Tech., Inc., supra;  Catalina, supra; Roberts, supra; Corning Glass Works, supra; Applied Materials, Inc., supra* |
| **Claim Element** | **Enpat's Proposed Claim Construction** |
| an upper doubler-strap and an upper filler-strap; | Terms should be given their plain, ordinary meaning.  (See *Toro Co., supra*)  This claim element is unambiguous in the intrinsic evidence.  See figures 4A and 4B of the '260 patent, page 5.  Reference numeral 2A of Figure 1 indicates an upper doubler-strap.  Reference numeral 2B of Figure 1 indicates an |

| | upper filler-strap. |
|---|---|
| a lower doubler-strap and a lower filler-strap; | Terms should be given their plain, ordinary meaning.  (See *Toro Co.,* supra)  This claim element is unambiguous in the intrinsic evidence.  See figures 4A and 4B of the '260 patent, page 5.<br><br>Reference numeral 3A of Figure 1 indicates a lower doubler strap.<br><br>Reference numeral 3B of Figure 1 indicates a lower filler-strap. |
| and a plurality of wing-spar attachment-bolts; | Terms should be given their plain, ordinary meaning.  (See *Toro Co., supra*)  This claim element is unambiguous.  No further construction is required.<br><br>Reference numeral 4 of Figure 1 indicates a plurality of wing-spar attachment bolts. |
| wherein each said upper filler-strap and each said upper doubler-strap have a third series of wing-attach boltholes that corresponds precisely with a first series of wing-attach bolt-holes in an upper edge of a wing spar web, and said lower filler-strap and said lower doublerstrap have a fourth series of wing-attach bolt-holes that corresponds precisely with a second series of wingattach bolt-holes in a lower edge of said wing spar; | Terms should be given their plain, ordinary meaning.  (See *Toro Co., supra*)  This claim element is unambiguous in the intrinsic evidence.  See figures 4A and 4B of the '260 patent, page 5.<br><br>Reference numeral 5A of Figure 1 indicates the third series of wing attach bolt holes in the upper filler-strap.<br><br>Reference numeral 5B of Figure 1  indicates the third series of wing attach bolt holes in the upper doubler-strap.<br><br>Reference numeral 5C of Figure 1  indicates the fourth series of wing attach bolt holes in the lower filler-strap.<br><br>Reference numeral 5D of Figure 1  indicates the fourth series of wing attach bolt holes in the lower doubler-strap. |
| wherein said upper and said lower doubler-straps have a doubler-protective-coating and said upper and said lower filler-straps have a | Terms should be given their plain, ordinary meaning.  (See *Toro Co., supra*)  This claim element is unambiguous.  No further |

| filler-protective-coating, and | construction is required. |
|---|---|
| wherein said upper doubler-strap has an upper inboard end angle and said lower doubler-strap has a lower inboard end angle. | Terms should be given their plain, ordinary meaning. (See *Toro Co., supra*)<br><br>Reference numeral 7A of Figure 1 indicates an upper inboard end angle.<br><br>Reference numeral 7B of Figure 1 indicates lower inboard end angle. |

| Claim 2 | Enpat's Proposed Claim Construction |
|---|---|
| … wherein said upper and said lower doubler straps are made of 4340 steel. | Terms should be given their plain, ordinary meaning. (See *Toro Co., supra*) This claim element is unambiguous. No further construction is required. |

| Claim 3 | Enpat's Proposed Claim Construction |
|---|---|
| … wherein said upper and said lower doubler straps are heat treated to 180,000 psi | Terms should be given their plain, ordinary meaning. (See *Toro Co., supra*) This claim element is unambiguous. No further construction is required. |

| Claim 4 | Enpat's Proposed Claim Construction |
|---|---|
| … wherein said upper and said lower filler straps are made of 2024-T3 aluminum | Terms should be given their plain, ordinary meaning. (See *Toro Co., supra*) This claim element is unambiguous. No further construction is required. |

| Claim 5 | Enpat's Proposed Claim Construction |
|---|---|
| … wherein said upper inboard-end angle on said upper doubler strap is approximately 5° | Terms should be given their plain, ordinary meaning. (See *Toro Co., supra*) This claim element is unambiguous in the intrinsic evidence. See figures 4A and 4B of the '260 patent, page 5. |

| | See also Figure 1, Reference numeral 7A |
|---|---|

| Claim 6 | Enpat's Proposed Claim Construction |
|---|---|
| … wherein said lower inboard-end angle on said lower doubler strap is approximately 6° | Terms should be given their plain, ordinary meaning.  (See *Toro Co., supra*)  This claim element is unambiguous in the intrinsic evidence.  See figures 4A and 4B of the '260 patent, page 5.  See also Figure 1, Reference numeral 7B |

| Claim 8 | Enpat's Proposed Claim Construction |
|---|---|
| … wherein said filler protective coating includes a first coating that is an alodine conversion coating and a second coating that is an epoxy primer. | Terms should be given their plain, ordinary meaning.  (See *Toro Co., supra*)  This claim element is unambiguous.  No further construction is required. |

| Claim 9 | Enpat's Proposed Claim Construction |
|---|---|
| … wherein each bolt-hole of said third and fourth series of said wing-attach bolt-holes in said upper doubler-strap, said lower doubler-strap, said upper filler-strap, and said lower filler-strap is free of said doubler-protective-coating and of said filler-protective-coating. | Terms should be given their plain, ordinary meaning.  (See *Toro Co., supra*)  This claim element is unambiguous.  No further construction is required. |

| Claim 12 | Enpat's Proposed Claim Construction |
|---|---|
| … wherein said upper doubler-strap and said upper filler-strap each have a series of five rivet holes and said lower doubler-strap and said lower filler-strap each have a series of seven rivet holes. | Terms should be given their plain, ordinary meaning.  (See *Toro Co., supra*)  This claim element is unambiguous.  No further construction is required. |

| Claim 13 | Enpat's Proposed Claim Construction |
|---|---|

| | |
|---|---|
| … further comprising a plurality of wing-attach bolts, a plurality of cap angle bolts, a corresponding plurality of nuts and washers for said wing attach bolts, and a plurality of rivets. | Terms should be given their plain, ordinary meaning.  (See *Toro Co., supra*)  This claim element is unambiguous.  No further construction is required.<br><br>See also Figure 1. |



Figure 1.[5]

**WHEREFORE,** based upon the foregoing, Plaintiff Enpat respectfully moves this Court

to adopt the above claim construction regarding asserted Claims 1, 2, 3, 4, 5, 6, 8, 9, 12, and 13

as the proper construction of these claims under the law as applied to the facts and circumstances

of this case, and to issue a Claim Construction Opinion accordingly.

---

[5] Figure 1 is, in fact, a photograph of the accused instrumentality in this case.  The photograph shows the elements of the unlicensed "JCM" or "Canadian" kit complained of this Action, which Defendant Shannon admits is installed upon his Lake aircraft, and which he admittedly induced others to install on *their* Lake aircraft.  The mere fact that the elements of the Asserted Claims in this Action can be so clearly referred to this photograph is strong evidence not only of the unambiguous nature of the Asserted Claims, *but also is clear evidence of the undeniable willful infringement of the Asserted Claims by Defendant Shannon, and that he induced others to infringe the Asserted Claims as well.*

Dated July 1, 2011

Respectfully submitted,

/s/Stephen C. Thomas
Stephen C. Thomas
Registered U.S. Patent Attorney
Fla. Bar No. 0641006
Patent Bar No. 57,078
sthomas@hctlaw.com
Robert A. Lynch
Registered U.S. Patent Attorney
Fla. Bar No. 0026459
Patent Bar No. 56,223
rlynch@hctlaw.com
(321) 253-3300 Phone
(321) 253-2546 Facsimile
Hayworth, Chaney & Thomas P.A
*Attorneys for Plaintiff Enpat, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 1, 2011, I electronically filed the foregoing with the Clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Mark J. Young
Mark Young, P.A.
12086 Fort Caroline Rd., Unit 202
Jacksonville, FL 32225
Telephone: (904)996-8099
Facsimile: (904) 980-9234
Email: myyoung@myyoungpa.com
*Attorney for Defendant Harry Shannon*

BY: /s/ Stephen C. Thomas